William Robert McBROOM, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 73S00–8606–CR–599.

Supreme Court of Indiana.

Nov. 22, 1988.

John B. Wilson, Jr., Christine J. Kline, Nashville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant William Robert McBroom was convicted of murder, Ind. Code § 35–42–1–1 (Burns 1985 Repl.), and criminal confinement, a class B felony, Ind. Code § 35–42–3–3 (Burns 1985 Repl.). The trial court sentenced him to thirty years for murder and twenty years for confinement, the terms to run concurrently.

On direct appeal, McBroom raises three issues:

   I.  Whether the trial court erred when it imposed a concurrent sentence for the confinement conviction because the confinement charge was added after a successful post-conviction proceeding;

  II.  Whether the evidence is sufficient to support the murder conviction; and

 III.  Whether the prosecutor's conduct deprived the defendant of a fair trial and requires reversal.

McBroom and Sandra Cunningham married and had two children. Following a divorce from McBroom, Cunningham married David Ott, with whom she also had two children. Cunningham later divorced Ott and moved to Ohio with all four children.

In 1981, Ott obtained a court order requiring Cunningham to bring his two children to the human services office so that he could meet with them. Cunningham telephoned McBroom at his home in Florida and told him that Ott was attempting to take custody of her children. She also told McBroom that during her marriage to Ott, he had raped McBroom's daughter.

McBroom made immediate preparations to leave Florida. He borrowed a car and drove to Ohio with Jim Pitstick and Ronald Roberts. After the three men arrived at Cunningham's home, she showed McBroom photographs of Ott. She drove McBroom past the human services office where the meeting between Ott and his children was to take place. McBroom registered at a local hotel under the name "Robert Duncan" and wrote a fictitious address and license plate number on the registration card.

On the afternoon of September 21, 1981, Ott arrived at the human services office. He did not see his children because Cunningham refused to comply with the court order. As Ott left the office, McBroom and Roberts confronted him in the parking lot. McBroom told Ott that someone wanted to talk to him about his children. After driving to the hotel, the three men and Pitstick got into McBroom's car and drove away.

During several hours of traveling, Ott drank a few beers with McBroom and his companions. McBroom said Ott began to brag of his sexual exploits. After crossing the border from Ohio into Indiana, McBroom stopped the car and ordered Ott and Roberts out. McBroom, who also exited the car, instructed Pitstick to drive the car a short distance and then return. As Roberts sat on the side of the highway, McBroom and Ott walked down an embankment.

McBroom told Ott that he was the father of the girl Ott had raped. Then McBroom fatally shot Ott. McBroom returned to the side of the highway, got into the car and drove with Roberts and Pitstick to Florida. Enroute, McBroom telephoned Cunningham and informed her the "problem was taken care of."

## I. *Additional Charges Following Post–Conviction Relief*

In April 1982, McBroom pled guilty to the murder of Ott. The trial court accepted the plea and imposed a thirty-year sentence. Following a hearing in 1985, a post-conviction court vacated the conviction because McBroom had been inadequately advised before his plea. The State refiled the murder charge and filed two additional charges: criminal confinement and robbery. The jury found McBroom not guilty of robbery but convicted him of murder and confinement.

McBroom contends his conviction and sentence for criminal confinement should be vacated because the sentence violates Rule PC 1, § 10, Ind. Rules of Procedure for Post–Conviction Remedies. When McBroom filed his petition in December 1984, the rule read:

(a) If prosecution is initiated against a petitioner who has successfully sought relief under this Rule and a conviction is subsequently obtained, or

(b) If a sentence has been set aside pursuant to this Rule and the successful petitioner is to be resentenced,

then the sentencing court shall not impose a more severe penalty than that originally imposed....[1]

McBroom argues that the confinement conviction is an additional penalty the State

sought because he obtained post-conviction relief. Although the twenty-year sentence for confinement is to run concurrently with the thirty-year sentence for murder, he maintains that two sentences are greater than one sentence even if they are concurrent.

■ Section 10 implements fundamental notions of due process. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. It assures petitioners that they will not be punished for seeking post-conviction relief. *Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798. The language of the rule prohibits a trial court from imposing "a more severe penalty than that originally imposed." The issue in this case is whether a concurrent twenty-year sentence for the additional confinement conviction is a more severe penalty.

In the double jeopardy context, this Court has held a second conviction is an additional punishment even if that conviction results in a sentence which runs concurrent with the first conviction. *Hall v. State* (1986), Ind., 493 N.E.2d 433. In that case, the Halls received concurrent terms of five years for reckless homicide and two years for child neglect. We held that the conviction for child neglect violated the double jeopardy clause because it punished the Halls twice for the same continuous pattern of deprivation that resulted in reckless homicide. *Id.* at 436.

■ Section 10 applies not only to the offense for which the defendant was initially charged, but also to other crimes flowing from the occurrences that gave rise to the initial charge. *Bates v. State* (1981), Ind., 426 N.E. 404; *Ballard,* 262 Ind. at 502, 318 N.E.2d at 810.[2] McBroom's criminal con-

---

**1.** Section 10 was later amended to allow a court to impose a more severe sentence when "the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence...." This amendment only applies to petitions filed after January 1, 1986. *Tolson v. State* (1986), Ind., 493 N.E.2d 454.

**2.** We note that in *Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798, the Court found a violation of Section 10 and ordered the sentences to run concurrently. This is not authority for the proposition that a concurrent sentence is a no more severe penalty. In *Ballard,* the Court was concerned with establishing the applicability of Section 10 to all crimes arising from the occurrences that gave rise to the initial charge and not with whether the concurrent sentence is a more severe penalty.

finement charge arose from the same circumstances that gave rise to the murder charge. The State accepted McBroom's plea to murder and did not pursue the confinement charge. The prosecutor testified that he reviewed the case before retrial and decided to file the confinement charge even though he was not aware of any new facts. Section 10 prohibits the State from adding a charge after a post-conviction action.

We hold that the concurrent twenty-year sentence for the criminal confinement conviction is a more severe penalty within the meaning of Rule PC 1, § 10. The conviction and sentence for confinement must be vacated.

## II. *Sufficiency of the Evidence*

McBroom claims the evidence is insufficient to sustain his conviction for murder. He concedes that he shot Ott, but he seeks to have the murder conviction reduced to voluntary manslaughter. He claims he killed Ott in sudden heat.

When this Court reviews the sufficiency of the evidence, it considers the evidence and all reasonable inferences most favorable to the verdict. We will neither reweigh the evidence nor judge the credibility of the witnesses to determine if there was substantial probative evidence to prove each element beyond a reasonable doubt.

The distinguishing factor between murder and manslaughter is sudden heat. Ind. Code § 35–42–1–3(b) (Burns 1985 Repl.). Sudden heat is anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man; it prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection. *Utley v. State* (1986), Ind., 491 N.E.2d 200, 202. When a defendant asserts he acted with sudden heat, the State bears the burden of negating the presence of sudden heat beyond a reasonable doubt. *Smith v. State* (1987), Ind., 502 N.E.2d 485.

Five days before the killing, McBroom received a telephone call from Cunningham telling him that Ott had raped McBroom's daughter. Shortly after the call, McBroom drove to Ohio, registered at a hotel under a false name, and learned Ott's destination. He armed himself and waited for Ott in the parking lot of the human services office. McBroom lured Ott into his car and drove for several hours before stopping. At some point, one of McBroom's companions tied Ott's hands together behind his back.

When McBroom stopped the car, he ordered Pitstick to drive a short distance and return. McBroom led Ott down the embankment and shot him. Although he testified he shot Ott after Ott laughed about raping McBroom's daughter, the evidence of premeditation and deliberation is sufficient to support the jury's verdict for murder.

## III. *Prosecutorial Misconduct*

McBroom argues that the prosecutor's misconduct denied him a fair trial. This Court subjects instances of alleged prosecutorial misconduct to a two-part analysis. First, we determine whether the prosecutor engaged in misconduct. Second, we judge whether the misconduct placed the defendant in grave peril. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

**A. *McBroom's Presence in Jail.*** McBroom claims the following passage from the prosecutor's final argument is prejudicial misconduct: "The evidence is that this man, this defendant ... he's right where he belongs and that's in prison." McBroom claims that the prosecutor violated a court order preventing the State from telling the jury about McBroom's former guilty plea and imprisonment. The trial judge noted that the jury was well aware that the defendant was incarcerated during trial and would not necessarily infer that McBroom had earlier pled guilty to the murder and spent time in prison.

The conduct of counsel at final argument is within the trial court's discretion. *Spangler v. State* (1986), Ind., 498 N.E.2d 1206, 1208. Judge Palmer properly exercised that discretion in ruling that McBroom was not prejudiced by the prosecutor's comment.

**■** *B. McBroom's Drug Use.* McBroom argues that the prosecutor assailed his character and violated a court order by mentioning McBroom's cocaine use during argument. The prosecutor, however, only mentioned McBroom's drug use after McBroom's defense attorney raised the issue in his closing argument.

In final argument, McBroom's counsel said:

There is one other thing before I conclude and that's to deal with this ... allegation of an ounce of coke. In the trade that's called a cheap shot. If this prosecutor sincerely believed that McBroom or any of them had an ounce of cocaine, that would have been charged.

On rebuttal, the prosecutor responded: The cocaine ... he says ... has nothing to do with this case, just forget it. The prosecutor, if he really believed it would have prosecuted. Well, the prosecutor will decide what they do in given situations.... Ladies and gentlemen, [the cocaine] did have something to do with this case.... You've got a cocaine snuffing killer vs. a loving, caring father.

The prosecutor's comment does not rise to the level of misconduct because McBroom's attorney sought to challenge the allegation of McBroom's drug use. It would be unfair to allow McBroom's attorney to argue about the cocaine use and not allow the prosecutor to rebut the argument.

**■** *C. Threat of Prosecution.* McBroom contends the prosecutor failed to reveal threats and inducements that caused Pitstick and Roberts to testify. At a hearing on his motion to correct errors, McBroom presented affidavits of Pitstick, Roberts, and Roberts' wife. The affidavits state that the prosecutor threatened Pitstick and Roberts with prosecution if they did not testify. In response, the prosecutor filed an affidavit of his own along with that of a police officer. The prosecutor said he merely informed Pitstick and Roberts of the possibility of prosecution.

**■** The initial inquiry is whether the prosecutor's comment is an inducement requiring disclosure. A prosecutor has a duty to disclose "deals" made with a State's witness, such as promises, grants of immunity, or rewards in exchange for testimony. *Carey v. State* (1981), 275 Ind. 321, 416 N.E.2d 1252. Disclosure is not required absent concrete evidence of an agreement. *Burgin v. State* (1984), Ind., 475 N.E.2d 1155.

Because the existence of an agreement is a factual question, we will affirm the trial court's decision if it is supported by substantial evidence. Although McBroom offered evidence of an inducement, the prosecutor refuted its existence. The trial court denied McBroom's motion, and we have no reason to set aside that decision.

**■** Even if there was an agreement, McBroom was not placed in grave peril by the prosecutor's failure to disclose. The potential for charging Pitstick and Roberts was obvious to all who heard their testimony. Moreover, the testimony itself corroborated McBroom's version of the facts and did not detract from his defense.

None of these claims supplies grounds for reversal.

### IV. Conclusion

The criminal confinement conviction is vacated, and the cause remanded to the trial court for correction of sentence. In all other respects, the trial court is affirmed.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., concurs except for Issue I to which he dissents with opinion.

PIVARNIK, Justice, dissenting.

I dissent as to Issue I and concur as to all other issues. Neither *Hall, Bates,* nor *Ballard* are authority for the position of the majority in regard to Issue I.